OMEGA CONTRACTING, INC. and
Fabian Cardenas, Appellants,

v.

Juan TORRES, Appellee.

and

Juan Torres, Appellant,

v.

Dowdy–Ferry Sand and Gravel
Company, Appellee.

No. 2–03–106–CV.

Court of Appeals of Texas,
Fort Worth.

April 6, 2006.

Watson, Caraway, Harrington, Nelson, Midkiff & Luningham, LLP, E.L. Caraway

and Scott E. Lindsey, Fort Worth, for appellant Omega Contracting, Inc.

Chunn & Pilcher, Lonnie E. Chunn and Stephen R. Pilcher, San Antonio, for appellee Juan Torres.

Fee, Smith, Sharp & Vitullo, LLP, Tom Fee and Rebecca E. Bell, Dallas, for appellee Dowdy–Ferry Sand and Gravel Co.

PANEL A: CAYCE, C.J.; GARDNER and WALKER, JJ.

## OPINION ON MOTION FOR REHEARING AND REHEARING AND EN BANC

ANNE GARDNER, Justice.

We withdraw our opinion and judgment of September 29, 2005, and substitute the following. Our ultimate conclusions remain the same. We deny Appellant Juan Torres's motion for en banc rehearing.

### I. Introduction

This case presents several issues arising from a wreck involving four tractor-trailer rigs. We affirm in part and reverse in part and remand for new trial.

### II. Factual and procedural background

In the early twilight hours of April 17, 2001, four 18–wheeler gravel trucks converged on a two lane, undivided stretch of Highway 380 in Wise County. Driving three westbound rigs were Fabian Cardenas, an employee of Omega Contracting, Inc., followed by Michael Ray, who was in turn followed by Jason McBride. Driving eastbound was Juan Torres.

As the trucks converged, two wheels separated from Cardenas's tractor, the lead westbound rig. The wheels, which weighed 150–200 pounds each, rolled

across the center line into the eastbound lane and struck Torres's rig. Torres's truck veered left across the center line into the westbound lane, where it sideswiped Ray's truck. Ray's truck toppled over on its side and exploded in what one witness described as a 20 foot high ball of fire. Torres's truck then caromed back toward the eastbound lane. At the same instant, McBride drove his rig from the westbound lane toward the center line and the eastbound lane in an apparent attempt to avoid the collision between Torres and Ray. McBride and Torres collided head-on in the eastbound lane. Both rigs exploded in flames. Torres shot through the windshield of his truck, flew 65 feet through the air, and hit the pavement. He suffered massive injuries but lived. McBride was killed.

A few weeks before the accident, Omega had purchased Cardenas's truck from Porter Truck Sales, Inc. Porter hired M.C. Williams d/b/a M.C. Williams Tire Service to install new tires on the truck before it was delivered to Omega. Michael Paige, an M.C. Williams employee, actually installed the tires and reattached the wheels to the truck. At trial, several experts testified that the wheels fell off because the lug nuts were not securely tightened when the wheels were installed.

McBride's estate, wife, child, and parents ("the McBride plaintiffs") sued Cardenas, Omega, and Torres, among others, for negligence and gross negligence. Cardenas and Omega filed third party contribution claims against Porter and Williams. Torres asserted counter and cross-claims for negligence and gross negligence against McBride, Cardenas, Omega, and Porter and asserted a third-party claim against Dowdy–Ferry Sand and Gravel Company. Torres alleged that Dowdy–Ferry was vicariously liable for Cardenas's negligence under a "pass through arrange-

ment" between Omega and Dowdy–Ferry. We will discuss the details of the pass through arrangement later in this opinion.

The McBride plaintiffs settled their claims against Cardenas and Omega before trial. M.C. Williams filed for bankruptcy before trial, and the trial court severed the claims against him from the others. The trial court granted summary judgment in favor of Dowdy–Ferry on Torres's vicarious liability claims. The remaining claims and cross-claims were tried to a jury.

The jury found that the negligence of Torres, Porter, Cardenas, and Omega, among others, proximately caused McBride's death. The jury also found that the negligence of Porter, Cardenas, Omega, and Torres himself proximately caused Torres's injuries and assigned 5% responsibility to Porter, 30% to Cardenas, 40% to Omega, and 25% to Torres. The jury awarded a total of $6,105,000 to the McBride plaintiffs and $475,225.56 to Torres. The trial court signed a judgment comporting with the verdict.

Omega and Cardenas appeal from the judgment in favor of Torres. Torres appeals from the now-final summary judgment in favor of Dowdy–Ferry. Omega and Cardenas complain that the trial court erred by instructing the jury on negligence per se in connection with Torres's cross-claim, by refusing to instruct the jury on new and independent cause and excuses to negligence per se in connection with Torres's cross-claim, by refusing to submit Michael Paige's liability as a "settling person" or "responsible third party" to the jury, and of legally and factually insufficient evidence of negligence and proximate cause. Torres complains that the trial court erred by granting summary judgment in favor of Dowdy–Ferry on his vicarious liability claims.

### III. Discussion

#### A. Omega's issues

##### 1. Exclusion of "settling person" from charge

In their fourth issue, Omega and Cardenas argue that the trial court erred by refusing to submit to the jury the negligence of nonparty Michael Paige as a "settling person" under section 33.003 of the civil practice and remedies code. We agree.

Paige was employed by M.C. Williams. About a month before the accident, Porter hired M.C. Williams to install new tires on what would later become Cardenas's truck. Paige actually installed the tires. Paige testified that he did not know whether he tightened the lug nuts to the manufacturer's recommended torque. Porter then sold the truck to Omega. Cardenas was driving the truck when the wheels installed by Paige fell off.

Omega and Cardenas filed third-party contribution claims against Porter and Williams. Williams filed for bankruptcy, and the trial court severed all claims against him from the lawsuit. Omega and Cardenas then filed a motion to join Paige as a responsible third party. The trial court denied the motion. Meanwhile, Omega and Cardenas settled their claims against Paige for $10 and the right to purchase discount tires from Paige for three years. At trial, Omega and Cardenas sought to submit to the jury Paige's negligence as a "settling person" under section 33.003(3) of the civil practice and remedies code. The trial court denied their request.

We note at the outset that this case is governed by the version of chapter 33 of the civil practice and remedies code in effect prior to July 1, 2003. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 4.05, 2003 Tex. Gen. Laws 847, 856.

Former civil practice and remedies code section 33.003 provided that the trier of fact shall determine the percentage of responsibility for each claimant, each defendant, each settling person, and each responsible third party who has been joined under section 33.004. Act of May 4, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 Tex. Gen. Laws 971, 972 (amended 2003) (current version at Tex. Civ. Prac. & Rem.Code Ann. § 33.003 (Vernon Supp.2004–05)). "Settling person" was defined by former section 33.011(5) as "a person who at the time of submission has paid or promised to pay money or anything of monetary value to a *claimant* at any time in consideration of potential liability . . . for which recovery of damages is sought." Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 2.07, 1987 Tex. Gen. Laws 37, 41 (amended 2003) (current version at Tex. Civ. Prac. & Rem.Code Ann. § 33.011(5) (Vernon Supp. 2004–05)) (emphasis added). "Claimant" was defined by former section 33.011(1) as "a party seeking recovery of damages . . . including a . . . third-party plaintiff seeking recovery of damages." Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 2.07, 1987 Tex. Gen. Laws 37, 41 (amended 2003) (current version at Tex. Civ. Prac. & Rem.Code Ann. § 33.011(1) (Vernon Supp. 2004–05)).

Omega and Cardenas contend that they were "claimants" and Paige was a "settling person" whose percentage of negligence should have been determined by the jury under section 33.003. Torres replies that Omega and Cardenas were not claimants because they were not "seeking recovery of damages," and that the $10 settlement with Paige was a sham.

The first question we must answer is whether Omega and Cardenas were "claimants"; that is, were the parties seeking recovery of damages? *See* Tex. Civ.

PRAC. & REM.CODE ANN. § 33.011(1). In their motion to join Paige as a responsible third party, Omega and Cardenas sought permission to sue Paige for contribution. Though the trial court denied their motion and they did not sue Paige, it is apparent that Omega and Cardenas were "seeking" contribution from Paige. Thus, we can refine this first question to ask whether one who seeks contribution from a potential third-party defendant is seeking "recovery of damages." In *Vela v. Garza*, the Corpus Christi Court of Appeals held that a defendant who sues a third-party defendant for contribution is a "claimant" against the third-party defendant. 975 S.W.2d 801, 803 (Tex.App.-Corpus Christi 1998, no pet.).

■ Our case is distinguishable from *Vela* because Omega and Cardenas did not actually sue Paige, but the defendant in *Vela* did sue the third-party contribution defendant. Nonetheless, we reach the equivalent conclusion: One who seeks contribution seeks "recovery of damages" even if he has not sued the contribution defendant. An interpretation that equates "seeking contribution" with "seeking recovery of damages" is consistent with third-party practice as contemplated by rule 38, which provides that "a defendant, as a third-party plaintiff, may cause a citation and petition to be served upon a person not a party to the action who is or may be liable to the plaintiff for all or part of the plaintiff's claim against him." TEX.R. CIV. P. 38(a). A third-party action under rule 38, including a claim for contribution, is not an independent action, but is derivative of the plaintiff's claim against the third-party defendant. *Goose Creek Consol. ISD v. Jarrar's Plumbing, Inc.*, 74 S.W.3d 486, 492 (Tex.App.-Texarkana 2002, pet. denied). Thus, the words "third-party plaintiff seeking recovery of damages" in the definition of "claimant"

are meaningless unless "seeking recovery of damages" means seeking derivative relief, including contribution. Accordingly, we conclude that a defendant who seeks contribution is a "third-party plaintiff who seeks damages" and, therefore, a "claimant." *See* Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 2.07, 1987 Tex. Gen. Laws 41 (amended 2003) (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 33.011(1) (Vernon Supp.2004–05)).

Turning briefly back to the distinction between this case and *Vela*, we determine that the distinction makes no difference in this case because of the interplay between former section 33.011's definitions of "claimant" and "settling person." Because a "settling person" is one who pays anything of value to a claimant "*at any time*," a party may be a "claimant" even if the claim is settled before suit is filed. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 33.011(1), (5). We hold that Omega and Cardenas were "claimants" under former section 33.011(1).

■ The next question is whether Paige was a "settling person." At the time of submission, it was undisputed that Paige had paid or promised to pay $10 to claimants Omega and Cardenas and provide them with discount tires for three years in consideration of his potential liability to them by way of contribution for Torres's personal injury. Thus, Paige was a "settling person" under section 33.011(5).

We next consider Torres's argument that Paige is not a "settling person" because his $10 settlement with Omega and Cardenas was a sham. Torres cites no authority in support of his argument and our own research finds none. Torres contends that the settlement was a sham because it lacked adequate consideration. But Torres has no standing to complain about the amount of the settlement. Whether the settlement was $10 or $10

million, it neither inured to Torres's benefit nor limited any right of action Torres may have had against Paige. Torres could have sued Paige directly, but he did not do so. The settlement precluded only Omega and Cardenas from suing Paige.

Torres also claims that the settlement was simply an attempt to circumvent the bankruptcy bar applicable to M.C. Williams. But to the extent that any party sought to hold Williams liable for Paige's negligence under the doctrine of respondeat superior, Paige would remain primarily responsible for his own negligence, if any. *See Leyendecker & Assocs., Inc. v. Wechter,* 683 S.W.2d 369, 375 (Tex.1984) (op. on reh'g) (holding employee is personally liable for tortious acts he commits during his employment). Thus, while M.C. Williams's bankruptcy may have shielded M.C. Williams from vicarious liability for Paige's negligence, it did not shield Paige from liability for his own negligence. We conclude that Omega and Cardenas's settlement with Paige was not a sham.

We hold that Paige was a "settling person" under section 33.011(5). The trial court abused its discretion by failing to submit Paige's negligence to the jury to determine the proportionate responsibility, if any, of Paige as well as the parties as required by former section 33.003. We sustain Omega and Cardenas's fourth issue to the extent that it complains of the trial court's failure to submit Paige's negligence to the jury as a settling person. It is therefore unnecessary to consider their alternative complaint about the trial court's

denial of their motion to join Paige as a responsible third party.

### 2. Negligence per se

■ In their second issue, Omega and Cardenas argue that the trial court erred by instructing the jury on negligence per se in connection with Torres's personal injury claim. In their third issue, they argue that the trial court erred by failing to instruct the jury on excuses to negligence per se in connection with Torres's personal injury claim.[1] We agree with both contentions.

■ Generally, we review a trial court's decision to submit or refuse a particular instruction under an abuse of discretion standard. *James v. Kloos,* 75 S.W.3d 153, 162 (Tex.App.-Fort Worth 2002, no pet.). However, a trial judge must submit a requested jury question if it is supported by some evidence. *Id.* A trial court has no "discretion" in determining what the law is. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992). When the complaint is that a definition or instruction misstates the law or is improperly worded, we apply a de novo standard of review. *Schorlemer v. Reyes,* 974 S.W.2d 141, 146 (Tex.App.-San Antonio 1998, pet. denied).

The trial court submitted both common law and negligence per se instructions to the jury as part of the single, broad-form negligence issue regarding Torres's injuries. The trial court submitted the following negligence per se instructions to the jury over the objection of Omega and Cardenas:

---

1. Omega and Cardenas also argue in their third issue that the trial court erred by failing to grant their no-evidence motion for partial summary judgment on Torres's negligence per se allegations. When a motion for summary judgment is denied by the trial court and the case is thereafter tried on its merits, the order denying the motion for summary judgment is not reviewable on appeal. *In re*

*R.W.,* 129 S.W.3d 732, 744 (Tex.App.-Fort Worth 2004, pet. denied). We have no jurisdiction to review the trial court's denial of Omega and Cardenas's no-evidence motion. *See id.* We therefore dismiss the part of Omega and Cardenas's third issue that concerns denial of their motion for partial summary judgment. *See id.*

The law provides that a motor carrier shall not operate a motor vehicle that has:

(a) wheels or rims that are cracked or broken;

(b) stud or bolt holes that are elongated (out of round); or

(c) nuts or bolts that are missing or loose.

Failure to comply with this law is negligence itself.

The law provides that before driving a motor vehicle the driver shall

(a) be satisfied that the motor vehicle is in safe operating condition;

(b) review the last driver vehicle inspection report; and

(c) sign the report only if defects or deficiencies were noted by the driver who prepared the report, to acknowledge that the driver has reviewed it and that there is a certification that the required repairs have been performed. The signature requirement does not apply to listed defects on a towed unit which is no longer part of the vehicle combination.

Failure to comply with this law is negligence itself.

The law provides that every motor carrier shall systematically inspect, repair and maintain or cause to be systematically inspected, repaired and maintained, all motor vehicles subject to its control. Parts and accessories shall be in safe and proper operating condition at all times. These include those specified in part 393 of this subchapter and any additional parts and accessories which may affect safety of operation, including, but not limited to, wheels and rims. Failure to comply with this law is negligence in itself.

The instructions tracked the language of sections 393.205, 396.3, and 396.13 of the Federal Motor Carrier Safety Regulations ("FMCSR"), 49 C.F.R. pt. 390 (2005).

Negligence per se is a concept adopted by the civil courts in which a duty is based on a standard of conduct created by a statute rather than on the reasonably prudent person test used in pure negligence claims. *Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex.1997). In such a case, the jury is not asked to decide whether the defendant acted as a reasonably prudent person would have acted under the same or similar circumstances. *Supreme Beef Packers, Inc. v. Maddox*, 67 S.W.3d 453, 455 (Tex.App.-Texarkana 2002, pet. denied). The statute itself states what a reasonably prudent person would have done. *Id.* If an excuse is not raised, the only inquiry for the jury is whether the defendant violated the statute and, if so, whether the violation was a proximate cause of the injury. *Id.* An administrative regulation may also form the basis of negligence per se. *Freudiger v. Keller*, 104 S.W.3d 294, 296 (Tex.App.-Texarkana 2003, pet. denied).

Several Texas cases consider sections of the FMCSR in the negligence per se context, but none has considered the sections implicated here. *See, e.g., Reinicke v. Aeroground, Inc.*, 167 S.W.3d 385, 396 (Tex. App.-Houston [14th Dist.] 2005, pet. filed) (holding trial court did not err in failing to instruct jury on negligence per se when there was no evidence that failure of disabled truck's driver to set out roadside warning triangles as required by FMCSR was proximate cause of collision); *Freudiger*, 104 S.W.3d at 297–98 (holding section of FMCSR governing operations during hazardous weather conditions did not create a special standard of care); *N. Am. Van Lines, Inc. v. Emmons*, 50 S.W.3d 103, 124 (Tex.App.-Beaumont 2001, pet. denied) (holding negligence per se instruction was proper in connection with

FMCSR's prohibition against employer knowingly allowing a person to operate a commercial vehicle without a commercial license); *Yap v. ANR Freight Sys., Inc.*, 789 S.W.2d 424, 427 (Tex.App.-Houston [1st Dist.] 1990, no writ) (noting without comment trial court's negligence per se instruction arising from several FMCSR provisions). Therefore, we must determine whether the relevant provisions of the FMCSR create a negligence per se standard.

The threshold questions in every negligence per se case are whether the plaintiff belongs to the class that the statute was intended to protect and whether the plaintiff's injury is of a type that the statute was designed to prevent. *Perry v. S.N.*, 973 S.W.2d 301, 305 (Tex.1998). The purpose of the FMCSR is, among other things, to promote the safe operation of commercial motor vehicles, minimize dangers to the health of operators of commercial motor vehicles, and enhance commercial motor vehicle safety and thereby reduce highway fatalities, injuries, and property damage. 49 U.S.C.A. § 31131 (West 2005). The gravamen of Torres's claim against Omega and Cardenas is a highway injury caused by the unsafe operation of a commercial motor vehicle. We hold that Torres belongs to the class the regulations were intended to protect, and his injury is of a type that the regulations were designed to prevent.

But this does not end our inquiry; we must still determine whether it is appropriate to impose tort liability for violations of the relevant regulations. *See Perry*, 973 S.W.2d at 306. In *Perry*, the supreme court listed five factors to consider in determining whether a statute is an appropriate standard for negligence per se. *Id.* at 309. Those factors are (1) whether the regulations are the sole source of any tort duty from the defendant

to the plaintiff or merely supply a standard of conduct for an existing common law duty; (2) whether the regulations put the public on notice by clearly defining the required conduct; (3) whether the regulations would impose liability without fault; (4) whether negligence per se would result in ruinous damages disproportionate to the seriousness of the regulatory violation, particularly if the liability would fall on a broad and wide range of collateral wrongdoers; and (5) whether the plaintiff's injury is a direct or indirect result of the violation of the regulations. *Id.* "These factors are not necessarily exclusive, nor is the issue properly resolved by merely counting how many factors lean each way." *Id.* at 306. With these factors in mind, we turn to the negligence per se instructions in this case.

### a. Section 393.205

We will first consider section 393.205, which provides as follows:

§ 393.205 Wheels.

(a) Wheels and rims shall not be cracked or broken.

(b) Stud or bolt holes on the wheels shall not be elongated (out of round).

(c) Nuts or bolts shall not be missing or loose.

49 C.F.R. § 393.205 (2005). Subsections (b) and (c) are relevant to this case. Omega and Cardenas argue that the requirement that lug nuts shall not be "loose" does not put the public on notice by clearly defining the required conduct because the regulations do not define the word "loose" nor specify any particular amount of torque. We agree. In this context, the word "loose" is vague and not susceptible of precise meaning. It does not put the public—or in this case, the owners, operators, and drivers of commercial vehicles—on notice of what conduct is prohibited or required. Torres is correct in observing that

we must give "loose" its ordinary definition of "not rigidly fastened or securely fastened," [2] but that definition does not make the regulation any more precise. We hold that section 393.205(c)'s requirement that nuts shall not be loose is not an appropriate standard for applying negligence per se.

By contrast, the other relevant requirements of 393.205(b) and (c) are clearly and objectively defined. A bolt hole either is round or out of round. A nut is either missing or present. These requirements are sufficiently clear to put the public on notice of the required conduct. But as submitted to the jury by the trial court, these requirements run afoul of another of the *Perry* factors: They impose liability without fault. In this connection, we turn to Omega and Cardenas's complaint that the trial court refused to submit instructions on excuse to negligence per se. Omega and Cardenas requested, and the trial court refused to submit, the following instruction on excuse:

> [A]s to [Omega and Cardenas], a failure to comply is excused and not negligence if [Omega and Cardenas] (a) neither knew nor should have known of the occasion for compliance. . . .

The source of this instruction is the Supreme Court of Texas's opinion in *Impson v. Structural Metals, Inc.*, 487 S.W.2d 694, 696 (Tex.1972). In *Impson,* the supreme court adopted section 288A of the Restatement (Second) of Torts, which lists five categories of excuses to negligence per se, one of which tracks the instruction requested by Omega and Cardenas. *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 288A(b) (1965)). As an example of a situation in which an actor neither knows nor should know of the occasion for compliance, the supreme court cited "cases where a night driver has a tail light go out unexpectedly and without his knowledge." *Id.*

This case is analogous to the example cited by the supreme court. Cardenas testified that on the morning of the accident he visually inspected his truck. Other testimony established that a visual inspection is the industry standard of care. Cardenas testified that he saw no out of round bolt holes or missing lug nuts on his truck's wheels. There was testimony that eight of the ten lug nuts on the wheels in question fell off before the accident, and the bolt holes on the wheels were found to be out of round or wallowed out after the accident. One metallurgist testified that the wallowing out could have occurred during the 70 miles that Cardenas drove between his inspection and the accident.

Cardenas testified that he was unaware of any problems until another driver told him via CB radio that two wheels had come off his truck. Thus, there is some evidence to support the inference that, like the night driver's broken tail light in the supreme court's example, the lug nuts fell off and the bolt holes wallowed out unexpectedly and without Cardenas's knowledge. With regard to the excuse instruction requested by Omega and Cardenas, "compliance" in this case means not driving a truck with missing lug nuts or out of round bolt holes under section 393.205, and the "occasion for compliance" arose when the lug nuts fell off.

We now turn back to the *Perry* factors and the question of whether the trial court's instruction tended to subject Omega and Cardenas to liability without fault. The answer to this question is "yes." Because it is undisputed that at some point Cardenas drove his truck with missing lug nuts and out of round bolt holes, the jury had no choice but to find Cardenas negli-

---

**2.** WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 705 (1983).

gent per se. In other words, the trial court's instruction subjected Cardenas and Omega to strict liability without regard to fault. The trial court could have avoided this problem by submitting the instruction on excuse requested by Omega and Cardenas. The excuse instruction would have permitted the jury to consider whether Cardenas knew or should have known that his wheels were missing lug nuts and had out of round bolt holes—that is, to determine whether Cardenas was at fault. The combination of the trial court's negligence per se instruction based on section 393.205 and its refusal to submit the excuse instruction was error.

We hold that the trial court erred in submitting the negligence per se instruction as written based on section 393.205. We realize that we have considered only two of the *Perry* factors, but we find those two factors compelling enough to override the other three factors in this case. An appropriate instruction based on section 393.205 would have omitted the reference to "loose" nuts or bolts and included the instruction on excuse.

### b. Sections 396.3 and 396.13

■ We now consider sections 396.3 and 396.13 of the FMCSR, which provide in pertinent part as follows:

§ 396.3 Inspection, repair, and maintenance.

(a) General. Every motor carrier shall systematically inspect, repair, and maintain, or cause to be systematically inspected, repaired, and maintained, all motor vehicles subject to its control. (1) Parts and accessories shall be in safe and proper operating condition at all times. These include those specified in part 393 of this subchapter and any additional parts and accessories which may affect safety of operation, including but not limited to, frame and frame

assemblies, suspension systems, axles and attaching parts, wheels and rims, and steering systems....

§ 396.13 Driver inspection.

Before driving a motor vehicle, the driver shall:

(a) Be satisfied that the motor vehicle is in safe operating condition;

(b) Review the last driver vehicle inspection report; and

(c) Sign the report, only if defects or deficiencies were noted by the driver who prepared the report, to acknowledge that the driver has reviewed it and that there is a certification that the required repairs have been performed. The signature requirement does not apply to listed defects on a towed unit which is no longer part of the vehicle combination.

49 C.F.R §§ 396.3(a), 396.13 (West 2005). Omega and Cardenas argue that these sections are not appropriate bases for negligence per se instructions because they simply incorporate the ordinarily prudent person standard.

■ When a statute incorporates the ordinarily prudent person standard, negligence per se does not apply because the statute does not establish a specific standard of conduct different from the common-law standard of ordinary care. *Supreme Beef Packers*, 67 S.W.3d at 456. "For example, when a statute requires a person to exercise his or her judgment, as when a driver should proceed only when it is safe to do so, the statute reflects a standard of care that is no different from the ordinarily prudent person standard." *Id.*

In *Supreme Beef Packers*, the Texarkana Court of Appeals held that the trial court erred by instructing the jury on negligence per se in connection with sever-

al regulations. *Id.* at 457. Two of the regulations set out standards of care similar to the standards set out in sections 396.3 and 396.13. *See id.;* 29 C.F.R. §§ 1910.242 ("Each employer shall be responsible for the safe condition of tools and equipment used by employees, including tools and equipment which may be furnished by employees."), 1910.303(b)(1) ("Examination. Electrical equipment shall be free from recognized hazards that are likely to cause death or serious physical harm to employees.") (West 2005). The Texarkana court held that the regulations in question were not an appropriate basis for negligence per se because "[t]here is obviously no clearly-defined standard of conduct specified here. Determining what is or is not safe in these circumstances bears practically no difference from determining what is or is not reasonable." *Supreme Beef Packers,* 67 S.W.3d at 458.

Likewise, sections 396.3 and 396.13 simply require a motor carrier to maintain motor vehicles "in safe and proper operating conditions" and a driver to "[b]e satisfied that the motor vehicle is in safe operating condition." 49 C.F.R. §§ 396.3, 396.13. Determining what is or is not safe in these circumstances bears practically no difference from what is or is not reasonable. We hold that sections 396.3 and 396.13 are not appropriate bases for a negligence per se instruction. The trial court erred by submitting these instructions to the jury.

We need not conduct a harm analysis with regard to the negligence per se instructions because we have already determined that the trial court's failure to submit the negligence of settling person Michael Paige was error that requires reversal and remand for a new trial. *See* Tex.R.App. P. 44.1(a), 47.1. We sustain Omega and Cardenas's second issue, and we sustain their third issue in part.

### 3. New and independent cause

In their first issue, Omega and Cardenas complain that the trial court erred in refusing to instruct the jury on new and independent cause with regard to Torres's negligence question. The new and independent cause alleged by Omega and Cardenas was Torres's own faulty evasive action.

When a party complains about the court's refusal to submit a requested instruction or definition, the question on review is whether the request was "reasonably necessary to enable the jury to render a proper verdict." *Vinson & Elkins v. Moran,* 946 S.W.2d 381, 405 (Tex. App.-Houston [14th Dist.] 1997, writ dism'd by agr.). A trial judge must submit a requested jury question if it is supported by some evidence. *See Kloos,* 75 S.W.3d at 162. If the evidence in a negligence case raises the issue of new and independent cause, it is reversible error not to include the term in the definition of proximate cause and to define it. *J. Wigglesworth Co. v. Peeples,* 985 S.W.2d 659, 665 (Tex.App.-Fort Worth 1999, pet. denied).

New and independent cause is the act or omission of a separate and independent agency that destroys the causal connection between the negligent act or omission of the defendant and the injury. *See Phoenix Refining Co. v. Tips,* 125 Tex. 69, 81 S.W.2d 60, 61 (1935); *J. Wigglesworth,* 985 S.W.2d at 665; Comm. On Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges—General Negligence & Intentional Personal Torts PJC 3.1 (2003). The doctrine is not an affirmative defense; rather, it is one element to be considered by a fact finder in determining whether proximate cause exists. *Dallas Ry. & Terminal Co. v. Bailey,* 151 Tex. 359, 250 S.W.2d 379, 383 (1952); *Benitz v. Gould Group,* 27 S.W.3d

109, 116 (Tex.App.-San Antonio 2000, no pet.); *see also Dillard v. Texas Elec. Coop.,* 157 S.W.3d 429, 432 (Tex.2005) (noting that new and independent cause is one of several issues in the nature of inferential rebuttals that should be submitted by instruction); PJC 3.1 cmt.

New and independent cause contemplates that an independent force, rather than the alleged negligent acts of the parties, was responsible for the plaintiff's injuries. *Eoff v. Hal and Charlie Peterson Found.,* 811 S.W.2d 187, 192–93 (Tex.App.-San Antonio 1991, no writ.); *Galvan v. Fedder,* 678 S.W.2d 596, 598 (Tex. App.-Houston [14th Dist.] 1984, no writ). The factors we consider to determine whether an act is a new and independent cause highlight this principle. Those factors include the following:

> (d) whether the operation of the intervening force is due to a *third person's act* or to his failure to act;
>
> (e) whether the intervening force is due to an *act of a third person* which is wrongful toward the other and as such subjects the third person to liability to him; [and]
>
> (f) the degree of culpability of a wrongful act of a *third person* which sets the intervening force in motion.

*Kloos,* 75 S.W.3d at 162 (emphases added) (citing *Humble Oil & Refining Co. v. Whitten,* 427 S.W.2d 313, 315 (Tex.1968)); *Knoll v. Neblett,* 966 S.W.2d 622, 634 (Tex. App.-Houston [14th Dist.] 1998, pet. denied). "[U]nder Texas law, a new and independent cause that extinguishes the liability of a party cannot arise out of the affirmative act of negligence by either the plaintiff or the defendant." *Biaggi v. Patrizio Rest., Inc.,* 149 S.W.3d 300, 305 (Tex.

App.-Dallas 2004, pet. filed) (citing *Motsenbocker v. Wyatt,* 369 S.W.2d 319, 324 (Tex.1963)).

The new and independent cause alleged by Omega and Cardenas was faulty evasive action on the part of Torres. While the evidence was conflicting, Omega and Cardenas did present some evidence that Torres took faulty evasive action by steering, rather than skidding, across the center line and into westbound traffic.

But Torres's faulty evasive action was not an "independent force" arising from the act or omission of a third party. Omega and Cardenas sought the "new and independent cause" instruction as cross-defendants in connection with Torres's own negligence claim against them. As cross-defendants, Omega and Cardenas were not entitled to submission of Torres's affirmative acts of negligence as a new and independent cause of his own injuries. *See id.*

Moreover, the trial court did submit Torres's comparative fault in causing his own injury to the jury. Question 11 asked the jury whether the negligence of Torres, as well as that of Omega and Cardenas, was a proximate cause of Torres's injury.[3] To submit the comparative fault issue, which already included an appropriate instruction on proximate cause, *and* the new and independent cause instruction to the jury would have the effect of instructing the jury to consider Torres's comparative fault twice.

The evidence that Torres took faulty evasive action is no evidence that an "independent force" or "some person not a party to the litigation" proximately caused his injuries. We therefore hold that the trial court did not abuse its discretion when it

---

**3.** Question 12 asked the jury to apportion percentages of fault among the parties found liable in question 11, including Torres.

refused to submit the new and independent cause instruction. We overrule Omega and Cardenas's first issue.

### 4. Legal sufficiency of evidence of common law negligence and proximate cause

 In their fifth issue, Omega and Cardenas argue that the evidence of negligence and proximate cause is legally and factually insufficient to support the judgment. Because we have already determined that the judgment of the trial court must be reversed and remanded for other reasons, we limit our analysis of this issue to the legal sufficiency of the evidence regarding Omega and Cardenas's common law negligence and proximate cause. If the evidence of common law negligence or proximate cause is legally insufficient to support the judgment, we must reverse and render judgment on Torres's common law negligence claim.

In determining a "no evidence" issue, we are to consider only the evidence and inferences that tend to support the finding of the disputed fact and disregard all evidence and inferences to the contrary. *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex.2001); *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex.1996); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). But we do not disregard contrary evidence if there is no favorable evidence, or if contrary evidence renders supporting evidence incompetent or conclusively establishes the opposite. *City of Keller v. Wilson*, 168 S.W.3d 802, 810–11 (Tex.2005). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee*, 937 S.W.2d at 450; *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex.1996). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l, Inc. v.*

*Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex.2002).

A "no evidence" issue may only be sustained when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex.1998), *cert. denied*, 526 U.S. 1040, 119 S.Ct. 1336, 143 L.Ed.2d 500 (1999).

The evidence at trial established that a motor carrier and a commercial driver exercise ordinary care by visually inspecting the wheels and lug nuts. Cardenas testified that it is extremely important for a truck driver to check his truck's lug nuts before driving because the wheels might fall off the truck if the lug nuts are loose. He testified that—for the first time ever— he conducted his pretrip truck inspection on the morning of the accident in the dark with a flashlight. Seventy miles down the road, two wheels fell off of his truck, rolled across the center line, and struck Torres's truck. Department of Public Safety Trooper Shawn Younger, who was in charge of investigating the accident, testified that Torres's injuries would not have occurred but for the wheels separating from Cardenas's truck. Cecil Lane, a retired DPS trooper who testified as an expert witness, testified that both Omega and Cardenas contributed to the accident.

The evidence at trial was much more extensive, but the evidence we recite here is more than a scintilla of evidence on the questions of common law negligence and proximate cause. We therefore overrule Omega and Cardenas's fifth issue.

### 5. Storage fees

Omega and Cardenas's sixth issue complains that the trial court improvidently altered its judgment to award a fee to Rick Morales for storing the wrecked trucks. This issue was part of another appeal, which has since been settled and dismissed. Therefore, we do not consider Omega and Cardenas's sixth issue.

## B. Torres's issues

In five issues, Torres argues that the trial court erred by granting summary judgment in favor of Dowdy–Ferry on five theories under which Torres sought to hold Dowdy–Ferry vicariously liable for Cardenas's negligence, including the theories of coemployment, nonemployee on a mission, statutory employee, joint enterprise, and borrowed servant. We disagree with his argument.

### 1. Standards of review

With the exception of one element of joint enterprise, Dowdy–Ferry's motions for summary judgment were traditional motions under rule 166a(c).[4] In a traditional summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex.2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Sw. Elec. Power Co.*, 73 S.W.3d at 215; *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997); *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965).

Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *Great Am.*, 391 S.W.2d at 47.

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence are disregarded and the evidence favorable to the nonmovant is accepted as true. *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am.*, 391 S.W.2d at 47.

A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one essential element of a plaintiff's cause of action cannot be established. *Elliott–Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex.1999). The defendant as movant must present summary judgment evidence that conclusively negates an element of the plaintiff's claim. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant. *Id.*

### 2. The pass through arrangement

At the time of the accident, Cardenas was on his way to Bridgeport to pick up a load and haul it for a customer of Dowdy–Ferry under a "pass through arrangement" between Omega and Dowdy–Ferry. A pass through arrangement is when a carrier with no work for its trucks hauls loads for another carrier that has too much

---

4. Dowdy–Ferry's second motion for summary judgment mentioned rule 166a(i) in its introductory paragraph but nowhere else.

work. In this instance, Omega realized on April 16 that it had no work for its trucks on April 17. Omega's dispatcher called Dowdy–Ferry to see if Dowdy–Ferry had excess work that Omega's trucks could perform. Dowdy–Ferry did have excess work, and Omega agreed to send its drivers to haul loads for a Dowdy–Ferry customer. Dowdy–Ferry passed along the customer's instructions about the time, place, and material to be hauled to Omega. When the job was done, Dowdy–Ferry would invoice the customer and collect payment but then pass 100% of the proceeds to Omega for the loads hauled by Omega trucks; hence the term "pass through arrangement." Several witnesses testified that pass through arrangements are common in the trucking industry. From time to time, Omega would enter into pass through arrangements with Dowdy–Ferry and several other carriers.[5] Omega and Dowdy–Ferry are separate Texas corporations.

Torres sued Dowdy–Ferry in an attempt to hold it vicariously liable for Cardenas's alleged negligence. Torres alleged, among other theories, coemployment, nonemployee on a mission, statutory employee, joint enterprise, and borrowed servant. The trial court granted summary judgment in favor of Dowdy–Ferry on each of Torres's theories of vicarious liability.

### 3. Did Dowdy–Ferry have the right to control Cardenas?

 The coemployment, borrowed servant, and nonemployee on a mission theories of vicarious liability have one essential element in common: the right of control. *See Producers Chem. Co. v. McKay*, 366 S.W.2d 220, 225 (Tex.1963) (holding that whether an employee be-

comes a borrowed servant rests in the right of control); *English v. Dhane*, 156 Tex. 231, 294 S.W.2d 709, 711 (1956) (analyzing control as the key factor in establishing vicarious liability for the acts of a nonemployee); *White v. Liberty Eylau Sch. Dist.*, 880 S.W.2d 156, 159 (Tex.App.-Texarkana 1994, writ denied) (noting that the right of joint control over the employee is the key issue in coemployment theory). The right of control is the "supreme test" for determining whether a master-servant relationship exists. *Golden Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins*, 926 S.W.2d 287, 290 (Tex.1996). "[T]he master's right of control over his servant is the major factor governing whether to extend vicarious liability to cover a certain fact situation." *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 541 (Tex. 2003). "The right of control is ordinarily a question of fact." *Sparger v. Worley Hosp., Inc.*, 547 S.W.2d 582, 583 (Tex. 1977). To trigger vicarious liability, the right of control must extend to the specific activity from which the injury arose. *See Read v. Scott Fetzer Co.*, 990 S.W.2d 732, 736 (Tex.1998) (noting that in determining whether duty exists in retained control case, focus is on whether retained control was specifically related to alleged injury); *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 23 (Tex.1993) (same). Further, "the test of one's liability for the act or omission of his alleged servant is his right and power to direct and control his imputed agent in the performance *of the causal act or omission at the very instant of the act or neglect.*" *Am. Nat'l. Ins. Co. v. Denke*, 128 Tex. 229, 95 S.W.2d 370, 373 (1936) (emphasis added); *Millan v. Dean Witter Reynolds, Inc.*, 90 S.W.3d 760, 769 (Tex.App.-San Antonio 2002, pet. denied) (op. on reh'g).

---

5. Coincidentally, but not relevant to our analysis, Jason McBride was an employee of Dowdy–Ferry. Also worth noting but of little relevance is the fact that Luis Spinola, the president and owner of Omega, owned 49% of Dowdy–Ferry.

Thus, a threshold issue on Torres's coemployment, borrowed servant, and nonemployee on a mission theories is whether Dowdy–Ferry had the right to control Cardenas at the time of the negligent acts Torres alleged against Cardenas—specifically, whether Dowdy–Ferry had the right to control Cardenas when he made his pretrip inspection. If Dowdy–Ferry conclusively negated the right of control, then summary judgment was proper.

Dowdy–Ferry presented the following summary judgment proof. Luis Spinola, Omega's owner and president, testified that Cardenas was operating his truck in the course and scope of his employment with Omega at the time of the accident. Once Omega accepted the pass through job from Dowdy–Ferry, it was Omega's responsibility to insure that the job was performed safely and correctly. Dowdy–Ferry did not have any control over, or participate in, Omega's maintenance of its trucks. Dowdy–Ferry had no control over, and did not participate in, insuring that Omega's drivers performed the requisite pre and posttrip truck inspections. Dowdy–Ferry did not control or participate in the hiring or qualification of Omega's drivers, including Cardenas. Jeff Heimer, Omega's operation manager, testified that Omega had exclusive control over Cardenas's truck. If Dowdy–Ferry made changes to the job, only Omega could issue new instructions to Omega's drivers. Only Omega could communicate directly with its drivers via the company radio.

In response to Dowdy–Ferry's summary judgment motions, Torres offered the following evidence on the question of control. First, Omega's weekly job summary for Cardenas listed Dowdy–Ferry as Cardenas's foreman on the day of the accident. Second, Garcia testified that if Dowdy–Ferry personnel saw Cardenas dumping his truck's load in the wrong place, Dowdy–Ferry could tell Cardenas to dump the load elsewhere, and Garcia would expect Cardenas to comply with the instruction.

This testimony is no evidence that Omega had the right to control Cardenas in the performance of his pretrip inspection at the "very instant" that Cardenas made the inspection. *See Denke,* 95 S.W.2d at 373. Torres offered other evidence in a similar vein, none of which raises more than a scintilla of evidence on the question of Dowdy–Ferry's right to control Cardenas at the critical moment of the pretrip inspection.

We hold that Dowdy–Ferry conclusively negated the essential element of its alleged right to control Cardenas. The trial court did not err by granting summary judgment on Torres's claims of coemployment, borrowed servant, and nonemployee on a mission. We overrule Torres's issues one, two, and five.

### 4. Statutory Employment

In his third issue, Torres argues that fact issues precluded summary judgment on the question of whether Cardenas was Dowdy–Ferry's statutory employee under the FMCSR. We disagree.

Statutory employment is a theory of vicarious liability created by the FMCSR. Under the FMCSR, motor carriers have both a legal right and duty to control leased vehicles operated for their benefit. *Morris v. JTM Materials, Inc.,* 78 S.W.3d 28, 38 (Tex.App.-Fort Worth 2002, no pet.). The regulations create a statutory employment relationship between the employee of the lessor-owner and the lessee. *Id.* at 38–39. An interstate carrier's liability for equipment and drivers covered by leasing agreements is governed by the FMCSR rather than common-law doctrines of respondeat superior. *Id.* at 39. The purpose of the statutory employment

regulations is to ensure that carriers will be fully responsible for the maintenance and operations of leased equipment and the supervision of the borrowed drivers, thereby protecting the public from accidents, preventing public confusion about who was financially liable if accidents occurred, and providing financially responsible defendants. *Id.* at 38.

The threshold question in Torres's statutory employment claim is whether Dowdy–Ferry leased Cardenas's truck from Omega. Section 376.2 of the FMCSR defines "lease" as "[a] contract or arrangement in which the owner grants the use of equipment, with or without driver, for a specified period to an authorized carrier for use in the regulated transportation of property, in exchange for compensation." 49 C.F.R. § 376.2(e) (1997). "Use" in the phrase "the owner grants the use of equipment" is not defined by section 376.2. Section 376.11, which sets out general leasing requirements, contemplates that a lease involves the transfer of possession from the owner to the lessee: "Receipts, specifically identifying the equipment to be leased and stating the date and time of day *possession is transferred,* shall be given...." *Id.* § 376.11(b) (emphasis added). Section 376.11 also requires that a lease be in writing. *Id.* § 376.11(a). Section 376.12 sets out the requirements of a written lease, which include the requirement that "[t]he lease shall provide that the authorized carrier lessee shall have exclusive *possession, control, and use* of the equipment for the duration of the lease." *Id.* § 376.12(c) (emphasis added). Thus, under the FMCSR, a lease involves the possession, control, and use by one carrier of equipment owned by another.

We have already concluded that Dowdy–Ferry conclusively negated the issue of whether it had the right to control Cardenas. The same summary judgment evidence conclusively negates Dowdy–Ferry's right to control Cardenas's truck. Likewise, the summary judgment evidence conclusively proves that Dowdy–Ferry never took possession of Cardenas's truck.

Torres contends the summary judgment evidence raises fact issues on each of the elements of statutory employment set out by the Austin Court of Appeals in *John B. Barbour Trucking Co. v. State,* 758 S.W.2d 684 (Tex.App.-Austin 1988, writ denied). According to *Barbour,* a carrier is deemed the statutory employer of a nonemployee driver when (1) the carrier does not own the vehicle, (2) the carrier operated the vehicle under an arrangement with the owner to provide transportation subject to federal regulations, and (3) the carrier does not literally employ the driver. *Id.* at 688. If we were to adopt the *Barbour* elements, only the second element would be in question; it is undisputed that Dowdy–Ferry did not own Cardenas's truck and did not literally employ Cardenas. The word "operated" in the second element connotes control and possession. Thus, even under the *Barbour* test, Dowdy–Ferry conclusively negated an essential element of Torres's statutory employment allegation.

We therefore conclude that the pass through arrangement between Omega and Dowdy–Ferry was not a lease under the FMCSR. The doctrine of statutory employment is not applicable to Torres's claims against Dowdy–Ferry. The trial court did not err by granting summary judgment on Torres's statutory employment claim. We overrule Torres's third issue.

## 5. Joint enterprise

In his fourth issue, Torres complains that the trial court erred by granting summary judgment in favor of Dowdy–Ferry on his joint enterprise theory.

■ The essential elements of joint enterprise are (1) an express or implied agreement among the members of the group, (2) a common purpose to be carried out by the group, (3) a community of pecuniary interest in that purpose, and (4) an equal voice in the direction of the enterprise, which gives an equal right of control. *Triplex Commc'ns, Inc. v. Riley,* 900 S.W.2d 716, 718 (Tex.1995); *Shoemaker v. Estate of Whistler,* 513 S.W.2d 10, 16–17 (Tex.1974). Dowdy–Ferry moved for summary judgment on the third and fourth elements.

### a. Community of pecuniary interest

■ The ordinary meaning of pecuniary is "of or pertaining to money." *Wolff,* 94 S.W.3d at 531 (quoting Webster's New Universal Unabridged Dictionary 1428 (1996)). Thus, the third element of joint enterprise requires a monetary interest common among the members of the group; it must be one "shared without special or distinguishing characteristics." *Id.* (quoting *Ely v. Gen. Motors Corp.,* 927 S.W.2d 774, 779 (Tex.App.-Texarkana 1996, writ denied)). Indirect, potential financial interests do not satisfy the test. *Id.* at 532–33 (holding evidence that hospital's association with medical foundation enhanced hospital's reputation in medical community and attracted doctors to practice at hospital was no evidence of third element); *see also Blackburn v. Columbia Med. Ctr. of Arlington Subsidiary, L.P.,* 58 S.W.3d 263, 275–76 (Tex.App.-Fort Worth 2001, pet. denied) (holding that evidence of general benefit arising from hospital's agreement with radiology practice group was not even a scintilla of evidence of third element); *Ely,* 927 S.W.2d at 779 (holding wholesaler and retailer do not share community of pecuniary interest).

■ Torres points to seven items of evidence as raising a fact issue on the existence of a community of pecuniary interest between Dowdy–Ferry and Omega. First is the fact that Luis Spinola, the president and owner of Omega, is also the secretary, treasurer, part owner, and marketing director of Dowdy–Ferry, and in that capacity receives a check from Dowdy–Ferry every week based on Dowdy–Ferry's profitability. We reject the mere existence of common owners, officers, and employees as proof of community of pecuniary interest. To hold otherwise would tend to subject companies to joint venture liability whenever they shared an employee, an officer, or even a shareholder. Moreover, the fact that Spinola has a monetary interest in both companies is no evidence that Dowdy–Ferry and Omega have a common monetary interest.

Torres's other six items of evidence all relate to Dowdy–Ferry's interest in satisfying its customers in a timely manner. A satisfied customer, argues Torres, is more likely to be a repeat customer; thus, Dowdy–Ferry benefits from Omega's timely performance of the pass through job. But the effect of customer satisfaction on future revenue is precisely the sort of indirect, potential financial interest rejected by the supreme court in *Wolff,* this court in *Blackburn,* and the Texarkana Court of Appeals in *Ely.* Moreover, Torres points to no evidence that *Omega* derived any benefit from keeping Dowdy–Ferry's customers satisfied; thus, any benefit Dowdy–Ferry derived from customer satisfaction is not "shared without special or distinguishing characteristics." *See Wolff,* 94 S.W.3d at 530. We hold that Dowdy–Ferry's interest in customer satisfaction is no evidence of community of pecuniary interest between Dowdy–Ferry and Omega.

Torres relies heavily on *Texas Department of Transportation v. Able,* 35 S.W.3d 608 (Tex.2000). That case is distinguishable from the one before us. In *Able,* the

supreme court analyzed a contract between the department of transportation ("TxDOT") and the Houston Metropolitan Transit Authority ("Metro") for the joint operation of an HOV lane. *Id.* at 610. The contract explicitly acknowledged the "investment of substantial sums for mass transit purposes." *Id.* at 614. Another document stated that the HOV program was a joint effort between TxDOT and Metro that pooled federal, state, and local funds. *Id.* The supreme court held that these documents were some evidence that Metro and TxDOT had a community of joint interest in the HOV project because

> [the] project involved substantial sums of money and contemplated a sharing of resources in order to make better use of this money. It may well have been that the monetary and personnel savings produced from this pooling of resources was substantial. The documents also clearly contemplate an economic gain that could be realized by undertaking the activities in this manner.

*Id.*

In the case before us, there is no evidence that Dowdy–Ferry and Omega agreed to pool or share money or other resources. And while the evidence suggests that both Omega and Dowdy–Ferry contemplated economic gain by entering into the pass through arrangement, that gain was not "shared without special or distinguishing characteristics"; rather, Dowdy–Ferry was to pass along to Omega all of the revenue attributable to Omega's work and keep for itself all of the revenue attributable to the work of its own drivers.

We hold that Torres failed to raise a fact issue on the element of community of pecuniary interest.

#### b. Equal right of control

 The summary judgment evidence also falls short of a fact issue on the fourth element of joint enterprise, equal right of control. "[T]he equal-right-to-control element means 'that each [participant] must have an authoritative voice or . . . must have some voice and right to be heard.'" *Able*, 35 S.W.3d at 614, (quoting *Shoemaker*, 513 S.W.2d at 16). In *Able*, the supreme court looked to the rights and obligations expressly stated in the contract between TxDOT and Metro and found evidence of an equal right to control the operation and maintenance of the HOV lane. *See id.* at 615. On the other hand, the supreme court found no evidence of an equal right to control when a radio station and a nightclub agreed to sponsor a "ladies' night" promotion, but the nightclub controlled who was admitted or ejected from the club and how much alcohol to serve, at what price, and to whom. *See Triplex Commc'ns, Inc.*, 900 S.W.2d at 719. The "critical inquiry" in analyzing the "equal right of control" element is whether the defendant charged with joint enterprise liability had the right to control the tortfeasor at the time of the tortious conduct. *See Ely*, 927 S.W.2d at 780. In *Ely*, Ely's widow sought to hold General Motors liable for Ely's death after he was hit and killed by a mechanic test-driving a Cadillac for his employer, a GM dealership. *Id.* at 776. The dealership hired the driver, the dealership trained the driver, and only the dealership had the opportunity to daily monitor his activities. *Id.* at 780. The court concluded that this evidence conclusively negated the issue of equal right to control the driver. *Id.*

We have already analyzed the summary judgment evidence and concluded that Torres failed to raise a fact issue on Dowdy–Ferry's right to control Cardenas in connection with Torres's other vicarious liability allegations. The same evidence fails to raise a fact issue on the equal right to control element. In particular, the sum-

mary judgment evidence conclusively negates Dowdy–Ferry's right to control Cardenas at the time of his pretrip inspection—the allegedly tortious act from which all of Torres's other allegations flow. As in *Ely*, Omega hired Cardenas, Omega trained Cardenas, and only Omega had the opportunity to daily monitor his activities. We hold that Dowdy–Ferry conclusively negated the equal right of control element of joint enterprise.

Having concluded that Dowdy–Ferry conclusively negated the community of pecuniary interest and equal right of control elements of joint enterprise, we hold that the trial court did not err by granting summary judgment on Torres's joint enterprise claim. We overrule Torres's fourth issue.

## IV. Conclusion

We sustain Omega and Cardenas's second and fourth issues and their third issue in part, dismiss the remainder of their third issue for want of jurisdiction, overrule their first and fifth issues, reverse the judgment of the trial court as it pertains to Torres's cross-claims against Omega and Cardenas, and remand that part of the case for a new trial on Torres's cross-claims. We affirm the remainder of the judgment. We overrule all of Torres's issues and affirm the trial court's summary judgments in favor of Dowdy–Ferry.