Linda SHEFFIELD and Calvin
Rister, Appellants

v.

Jan Michael DRAKE, David Bandy,
and Breckenridge Independent
Grocers Alliance, Appellees.

No. 11–06–00236–CV.

Court of Appeals of Texas,
Eastland.

May 22, 2008.

Frederick Dunbar, Galbreath Law Firm, Attorneys At Law, and Burt L. Burnett, Burnett & Burke, LLP, Attorneys At Law, Abilene, TX, for appellant.

Robert Fugate, Amos D. Pettis, Don Martinson, Fanning, Harper & Martinson, P.C., Attorneys At Law, Dallas, E.L. Caraway III, R. Chad Kimble, Watson, Caraway, Nelson, Midkiff & Luningham, L.L.P., Fort Worth, TX, for appellee.

Panel consists of: WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

RICK STRANGE, Justice.

Linda Sheffield, individually and as administratrix of the estate of Cody Jayton Rister, and Calvin Rister filed suit against Jan Begeman, Brent Begeman, Steve Begeman, Jan Michael Drake, Breckenridge Independent Grocers Alliance (IGA), David Bandy, Mark Begeman, and Stepha-

nie Begeman,[1] seeking survival and wrongful death damages arising from Jayton's death in a motor vehicle accident. IGA, Bandy, and Drake filed motions for summary judgment. The trial court granted their motions and severed them from the lawsuit. We affirm.

## I. *Background Facts*

Brent was a college student. He came home to Breckenridge for the weekend. Brent and Jayton were friends. Brent, Jayton, Drake, Brian Means, and Olie Hedge met at the IGA grocery store parking lot Friday afternoon. Brent's brother, Mark, was an IGA floor manager. Brent and his friends pitched in to buy beer. Drake, Brian, and Jayton were sixteen years old; Olie was seventeen; and Brent was eighteen. Brent went inside the IGA but did not come back with any beer. Instead, he got beer from Mark's wife, Stephanie, at her house.

That night, people came to Brent's home for an informal party. Besides Brent, two other people brought beer. Neither of these were employed by IGA. However, an IGA employee, Beatrice Skaggs, provided a statement contending that IGA may have been indirectly involved in supplying the beer. Skaggs did not work the day of the accident but two days later heard an employee say that she had sold beer to Mark for the purpose of providing it to Brent for his party. The employee also said that, after the accident, Bandy (IGA's owner) told her, Mark, and Brent not to talk to anyone about the incident. Skaggs also claimed that IGA employees sold alcohol to minors on two other occasions during her one and one-half years of employment.

Brent started drinking at 8 or 9 p.m. Around 11 p.m., he and Jayton left the party in Brent's pickup and drove to McDonald's. They got something to eat and returned to Brent's house. After midnight, they left in Drake's pickup. Drake was in the house either asleep or passed out. Jayton got Drake's keys and was driving when they left the house.

Brent and Jayton were involved in a one-vehicle accident. Jayton was killed. Brent admitted to an investigating officer at the scene that he was driving. The police also interviewed Drake that night. He told them that he had passed out somewhere between ten and eleven o'clock. He denied giving anyone permission to take his pickup and said that someone must have taken the keys out of his pocket while he was asleep.

Sheffield filed suit and alleged that Brent negligently drove while intoxicated, that Bandy and IGA were providers of alcoholic beverages, that they provided alcohol to minors including Jayton, that Drake negligently entrusted his vehicle to Brent knowing that he was or would become intoxicated or, alternatively, if Jayton was driving, then Drake was negligent for permitting him to drive knowing that Jayton was or would become intoxicated.

Bandy and IGA filed a no-evidence motion for summary judgment. They argued that the Texas Dram Shop Act[2] was Sheffield's exclusive remedy and contended that Sheffield had failed to state a cause of action under the Act. Bandy and IGA also filed a separate traditional motion for summary judgment and argued that as a matter of law they did not violate the Dram Shop Act because they did not sell any alcohol to an obviously intoxicated person

---

1. We will refer to the plaintiffs collectively as Sheffield, the decedent as Jayton, and the Begemans by first name.

2. TEX. ALCO. BEV.CODE ANN. §§ 2.01–.03 (Vernon 2007).

or knowingly sell to a minor. Drake filed a combination no-evidence and traditional motion for summary judgment. Drake argued that, as a matter of law, he did not entrust his vehicle to Brent and that Sheffield had no evidence on several elements of a negligent entrustment cause of action. The trial court granted both no-evidence motions.

## II. Issues on Appeal

Sheffield challenges the trial court's decision to grant both motions for summary judgment. Bandy and IGA assert a cross-point conditionally complaining of the trial court's refusal to grant their traditional motion for summary judgment.

## III. Standard of Review

We will apply the well-recognized standards of review for summary judgments. No-evidence motions are reviewed under the same standard as a directed verdict. King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 750–51 (Tex.2003). Accordingly, we review the evidence in the light most favorable to the nonmovant and disregard all contrary evidence and inferences. Id. A trial court must grant a proper no-evidence motion for summary judgment unless the nonmovant produces more than a scintilla of probative evidence to raise a genuine issue of material fact on the challenged element of the claim. Tex.R. Civ. P. 166a(i).

For traditional motions, questions of law are reviewed de novo. St. Paul Ins. Co. v. Tex. Dep't of Transp., 999 S.W.2d 881 (Tex.App.-Austin 1999, pet. denied). To determine if a fact question exists, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all the evidence presented. Goodyear Tire & Rubber Co.

v. Mayes, 236 S.W.3d 754, 755 (Tex.2007). We must consider all the evidence in the light most favorable to the nonmovant, indulging all reasonable inferences in favor of the nonmovant, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671 (Tex.1979).

## IV. Analysis

### A. IGA and Bandy.

Sheffield argues that the trial court erred by granting IGA and Bandy's no-evidence motion because the Dram Shop Act does not preclude a common-law cause of action for providing alcohol to minors under the age of eighteen who drive while intoxicated. IGA and Bandy respond that summary judgment was proper because their liability is limited by the Dram Shop Act, because there is no evidence that either violated the Act, and because there is no evidence of proximate cause.

The Act creates a statutory cause of action for:

Providing, selling, or serving an alcoholic beverage ... upon proof that:

(1) at the time the provision occurred it was apparent to the provider that the individual being sold, served, or provided with an alcoholic beverage was obviously intoxicated to the extent that he presented a clear danger to himself and others; and

(2) the intoxication of the recipient of the alcoholic beverage was a proximate cause of the damages suffered.[3]

"Provider" is defined as "a person who sells or serves an alcoholic beverage under authority of a license or permit issued under the terms of this code or who other-

---

3. Section 2.02(b).

wise sells an alcoholic beverage to an individual," and "provision" is defined to include "the sale or service of an alcoholic beverage."[4] The Act contains an exclusivity provision, Section 2.03, which provides:

(a) The liability of providers under this chapter for the actions of their employees, customers, members, or guests who are or become intoxicated is in lieu of common law or other statutory law warranties and duties of providers of alcoholic beverages.

(b) This chapter does not impose obligations on a provider of alcoholic beverages other than those expressly stated in this chapter.

(c) This chapter provides the exclusive cause of action for providing an alcoholic beverage to a person 18 years of age or older.

Sheffield argues that Section 2.03 does not apply because Jayton was sixteen and subsection (c) is specifically limited to persons eighteen or older. It is unnecessary for us to resolve this question because, even if the exclusivity provision does not apply, Sheffield produced insufficient evidence to overcome a no-evidence motion for summary judgment.

Sheffield's argument necessarily requires proof that Jayton was driving while intoxicated when the accident occurred. If Brent was driving, then the exclusivity provision applies since he was eighteen. If the exclusivity provision applies, summary judgment was proper because Sheffield has no evidence that Brent was obviously intoxicated when he received the beer from Stephanie. Brent admitted to the investigating officer that he was the driver. To overcome this admission, Sheffield points to Bandy and IGA's answer where they included an affirmative defense that Jayton caused the accident by driving

while intoxicated. However, Bandy and IGA also pleaded that Brent caused the accident by driving while intoxicated. We note that Sheffield made similar alternative allegations. Sheffield originally contended that Brent was the driver. Sheffield's second amended petition retained this allegation but added an alternative allegation that, if Jayton was driving, then Drake was negligent for allowing him to drive.

Pleadings are ordinarily not considered competent summary judgment evidence. *Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex.1995). An exception exists for judicial admissions in an opponent's pleadings. *Lyons v. Lindsey Morden Claims Mgmt., Inc.*, 985 S.W.2d 86, 92 (Tex.App.-El Paso 1998, no pet.) (if a party's pleadings contain judicial admissions negating a cause of action, summary judgment may be granted on the basis of those pleadings). This exception is not applicable. Bandy and IGA's answer does not constitute a judicial admission that either Brent or Jayton was driving but merely asserts alternative affirmative defenses that the accident was proximately caused by the negligence of whomever was driving. Because Sheffield produced no evidence that Jayton was driving when the accident occurred, the trial court did not err by granting Bandy and IGA's no-evidence motion for summary judgment.

Even if we assume that a fact question exists on the driver's identity, there was no evidence that IGA or Bandy provided Jayton with any alcohol. Sheffield does not contend that Jayton acquired beer from IGA directly but argues that a civil conspiracy existed to provide minors with alcohol. The elements of a civil conspiracy claim are (1) two or more persons,

4. Section 2.01.

(2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as the proximate result. *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex.1983). Sheffield contends that Brent and Stephanie conspired to provide alcohol to minors; that Mark was tied to their conspiracy; and that, because Mark was an IGA floor manager, IGA and Bandy were vicariously responsible.

■ It is undisputed that Brent obtained beer from Stephanie, that he took the beer to his house, and that Jayton drank at least one of Brent's beers. To what extent this is evidence of an agreement between Brent and Stephanie or Mark we need not decide today because the question is whether *Bandy and IGA* conspired to provide alcohol to minors. The only evidence that IGA or Bandy were principals in a conspiracy was Skaggs's affidavit where she stated:

In August, 2003, I was employed by Breckenridge Independent Grocers Alliance (Breckenridge Breckenridge [sic] IGA) located at 1208 West Walker, Breckenridge, Texas, and worked under the supervision of its owner, David Bandy. I was off work on Friday, August 29, 2003. On the following Monday, September 1, 2003, I was working in the customer service booth at the store, within approximately three feet of my co-worker, Michelle Whitfield Heatley, and I overheard Michelle Heatley talking to a group of people, who I did not know. She told them that she had sold beer to the Breckenridge IGA Floor Manager, Mark Begeman, on Friday, August 29, 2003, during regular business hours, for the purpose of providing the alcohol to his underage brother, Brent Begeman, to be drank at a party at the residence of Steve Begeman, Jan Bege-

man, and Brent Begeman, which was the party later attended by Cody Jayton Rister prior to his death. Michelle Heatley was working the booth of another employee who was on break on the Friday of August 29, 2003, and stated that because Mark Begeman was an employee, she checked him out when he purchased the beer. She further stated, within my presence and hearing, that she, Mark Begemen and Brent Begeman had been called into a meeting by the owner of the store, David Bandy, regarding the sale of the beer to Mark Begeman and had been told that they were not allowed to talk to anyone about the incident.

Assuming without deciding that Mark or Michelle Heatley's knowledge is imputed to IGA and Bandy, this is some evidence that IGA sold beer to Mark knowing that Brent would ultimately take it to a party. It is no evidence that IGA or Bandy knew who would be at the party or who would consume any of Brent's beer.

■ Sheffield directs our attention to Skaggs's testimony that, after the accident, Bandy told Mark and Brent not to talk to anyone about the incident. Sheffield argues that Bandy engaged in a cover-up and, therefore, that a fact question exists on whether he ratified Mark's actions. "Ratification is the affirmance by a person of a prior act which when performed did not bind him, but which was professedly done on his account, whereby the act is given effect as if originally authorized by him." *Disney Enters., Inc. v. Esprit Fin., Inc.,* 981 S.W.2d 25, 31 (Tex. App.-San Antonio 1998, pet. dism'd w.o.j.). Skaggs's affidavit testimony may be evidence of improper behavior, but it does not show that Bandy ratified Mark's personal conduct. Sheffield also directs our attention to Skaggs's testimony that, on two other occasions, IGA employees sold alco-

hol to minors. This conclusory allegation is no evidence of an agreement to provide alcohol to minors on this occasion.

Sheffield's theory of liability would, in essence, make IGA strictly liable in this situation because it would extend IGA's liability beyond its control. Once Mark purchased the beer and took it home, IGA and Bandy had no further control over it. They never had control over Stephanie or Brent. This lack of control precludes the imposition of vicarious liability. *See F.F.P. Operating Partners v. Duenez*, 237 S.W.3d 680, 686 (Tex.2007).

Even at common law, alcohol providers have not been held to such a standard. The historical rule was that alcohol providers owed no duty to third persons for injuries caused by the provision of alcohol. *Smith v. Sewell*, 858 S.W.2d 350, 352 (Tex. 1993). In 1987, the Texas Supreme Court altered the absolute rule of no liability to create a duty on dram shops to not serve alcoholic beverages to a person it knows or should know is intoxicated. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 310 (Tex. 1987).[5] Although the supreme court recognized a new duty, it is important to note that the duty was measured at the time of sale when the provider had control and that this duty did not impose responsibility for the consequences of future actions beyond the provider's control.

Jayton's consumption of alcohol is too remote from Bandy and IGA's actions to impose liability. The mere fact that an IGA employee purchased beer from the store and gave the beer to his wife who then gave the beer to her brother-in-law who then shared the beer with his friends, one of whom subsequently drove while intoxicated, does not make Bandy or IGA liable as a provider. Sheffield's first issue

is overruled. This holding makes it unnecessary for us to reach Bandy and IGA's cross-issue.

## B. Drake.

■ In his second issue, Sheffield contends that the trial court erred by granting Drake's no-evidence motion for summary judgment because sufficient summary judgment evidence exists that Drake entrusted his vehicle to Brent. The elements of a negligent entrustment cause of action are (1) the owner entrusted a vehicle (2) to an unlicensed, incompetent, or reckless driver; (3) the owner knew or should have known that the driver was unlicensed, incompetent, or reckless; (4) the driver was negligent on the occasion in question; and (5) the driver's negligence proximately caused the accident. *Newkumet v. Allen*, 230 S.W.3d 518, 522 (Tex.App.-Eastland 2007, no pet.).

■ There was evidence that Drake allowed Brent and Jayton to drive his vehicle earlier that day. It is undisputed that Drake was involved in the acquisition of beer for the party, that he drank enough beer himself to lose consciousness at 10:30 or 11:00 p.m., that Jayton got Drake's keys, and that he and Brent left the house after midnight. Drake directs our attention to testimony from himself and Brent affirmatively establishing that Drake did not want anyone driving his vehicle after the party started, but because this is a no-evidence summary judgment review, we must confine ourselves to a review of the evidence in the light most favorable to Sheffield. *King Ranch*, 118 S.W.3d at 750–51.

---

5. This duty was short-lived. The Dram Shop Act became effective a week after *Poole* was issued. *F.F.P. Operating*, 237 S.W.3d at 684.

The mere fact that Brent or Jayton drove Drake's pickup earlier in the day before the party started and while accompanied by Drake is no evidence that Jayton had broader authority to drive Drake's vehicle after the party started or while Drake was asleep. *See Vaughn v. Watkins,* 344 S.W.2d 902 (Tex.Civ.App.-Eastland 1961, writ ref'd n.r.e.) (employee who drove company pickup on several occasions for personal and business reasons did not have permission to drive it at the time of the accident). Sheffield directs us to Brent's testimony that *he* would never steal a vehicle and that *he* never heard Drake say, "[D]on't drive my vehicle." Because it was Jayton and not Brent that obtained the keys, this does not establish that Jayton had Drake's consent. Summary judgment, therefore, was appropriate because there was no evidence of entrustment. Sheffield's second issue is overruled.

## IV. *Holding*

The judgment of the trial court is affirmed.