

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-08-132-CV

ELIZABETH SANTANA, INDIVIDUALLY          APPELLANT
AND AS PERSONAL REPRESENTATIVE
OF THE ESTATE OF ROJELIO SANTANA,
AND AS NEXT FRIEND OF DIANA
SANTANA, ROJELIO SANTANA, JR.,
MARISSA SANTANA, PAULINE SANTANA
AND FREDERICO SANTANA

V.

ARPIN AMERICA MOVING SYSTEM,          APPELLEES
LLC AND PAUL ARPIN VAN LINES, INC.

------------

## FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I. INTRODUCTION

This is a summary judgment appeal. Appellant Elizabeth Santana, individually and as personal representative of the estate of Rojelio Santana, and

---

[1] *See* Tex. R. App. P. 47.4.

as next friend of Diana Santana, Rojelio Santana, Jr., Marissa Santana, Pauline Santana, and Frederico Santana (hereinafter collectively referred to as "Appellant") raises twelve points challenging the trial court's summary judgments for Appellees, Arpin America Moving System, LLC ("AAMS") and Paul Arpin Van Lines, Inc. ("PAVL"). Appellant claims that the summary judgment evidence establishes that genuine issues of material fact exist on her claims against both AAMS and PAVL. For the reasons set forth below, we will affirm the trial court's summary judgment.

## II. FACTUAL BACKGROUND

Rojelio "Rocky" Santana ("Rocky") was a commercial driver; on August 7, 2004, in the capacity of an independent contractor, he drove a commercial vehicle owned by AAMS and leased by PAVL,[2] hauling household goods from Nesbit, Mississippi, to Dallas, Texas. Independent contract drivers like Rocky were permitted to hire "lumpers" to help them load and unload the trucks; the independent contract drivers were responsible for supervising and paying the "lumpers" they chose to hire. AAMS and PAVL maintain no contract or relationship with "lumpers" hired by the driver.

---

[2] PAVL is a federally registered motor carrier with a Department of Transportation ("DOT") number.

2

Rocky decided to hire two "lumpers," Alejandro Cisneros and Alejandro Ramirez, to assist him on the trip. Per AAMS policy, "lumpers" are not permitted to operate trucks under any circumstances. At some point during the return trip, Rocky permitted Ramirez—who did not possess a commercial driver's license—to drive the eighteen wheeler. AAMS and PAVL did not know Rocky had hired Cisneros and Ramirez as "lumpers" for the trip and did not authorize Ramirez to drive the truck. On August 7, 2004, while Ramirez was driving the truck, it struck a bridge support pillar; Rocky, Cisneros, and Ramirez were all killed.

First responders at the scene referred to the three victims as John Doe A, B, and C. The first responders all testified that John Doe A was driving; pictures of the victims taken at the scene of the accident were referred to in the depositions of the first responders and in the summary judgment affidavits of persons acquainted with Rocky and conclusively establish that Rocky was not John Doe A.[3]

---

[3] Officer Ron Parker first indicated in his initial accident report that Rocky had been driving, but he later submitted an amendment to the accident report stating that Ramirez had been driving. In any event, Officer Parker, as well as all of the other first responders, consistently and affirmatively testified that John Doe A was the driver and pictures of John Doe A are not pictures of Rocky.

3

Rocky's wife brought a wrongful death suit on her own behalf and on behalf of Rocky's minor children. Ultimately, the trial court granted summary judgments for AAMS and for PAVL on all of Appellant's claims against them. Appellant perfected this appeal, raising twelve points.[4]

### III.  APPELLANT'S CAUSES OF ACTION; AAMS'S AND PAVL'S TRADITIONAL AND NO-EVIDENCE MOTIONS FOR SUMMARY JUDGMENT

Appellant pleaded causes of action against AAMS for negligence, negligence per se, *res ipsa loquitur*, negligent entrustment/negligent supervision, and gross negligence. Appellant pleaded causes of action against PAVL as a worker's compensation nonsubscriber for gross negligence under the "election of remedies" doctrine and for vicarious liability under the doctrines of respondeat superior, statutory employee, and apparent agency.

AAMS filed a no-evidence motion for summary judgment, claiming that no evidence exists to support the causation element of Appellant's negligence per se claims; that *res ipsa loquitur* is not a cause of action recognized in Texas; that no evidence of proximate cause exists concerning Appellant's negligence claims; that no evidence exists in Appellant's negligent entrustment claims that

---

[4] Appellant's twelve points on appeal, with limited exceptions, do not segregate her arguments and analysis between AAMS and PAVL; the points simply group both defendants together. Liberally construing Appellant's points, we mirror Appellant's presentation of her points.

4

AAMS entrusted its vehicle to Ramirez and no evidence exists that AAMS knew Ramirez was an unlicensed, reckless driver; that no evidence exists that AAMS acted with the requisite mental state for gross negligence; and that no evidence exists that the doctrines of respondeat superior, actual agency or apparent agency, vice-principal, or statutory employee apply. AAMS contends that Rocky was an independent contractor and that no evidence to the contrary exists.

PAVL filed a no-evidence and a traditional motion for summary judgment. In its no-evidence motion, PAVL claimed that no evidence exists of the following elements of Appellant's claim for gross negligence: that PAVL was the common law or statutory employer of Rocky; that PAVL acted with gross negligence; and that any gross negligence by PAVL caused the accident. In its traditional motion for summary judgment, PAVL likewise claimed that the summary judgment evidence conclusively negates that PAVL was the common law or statutory employer of Rocky, that PAVL acted with gross negligence, and that any gross negligence by PAVL caused the accident.

## IV. SUMMARY JUDGEMENT STANDARDS OF REVIEW

### A. No-Evidence Motion

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the

5

ground that there is no evidence to support an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.*; *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex. 2002). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* Tex. R. Civ. P. 166a(i) & cmt.; *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)).

6

Less than a scintilla of evidence exists when the evidence is so weak that it does nothing more than create a mere surmise or suspicion of a fact. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). More than a scintilla of evidence exists when the evidence would enable reasonable and fair-minded people to reach different conclusions. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004); *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). A genuine issue of material fact is raised by presenting evidence on which a reasonable jury could return a verdict in the nonmovant's favor. *Moore*, 981 S.W.2d at 266; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–56, 106 S. Ct. 2505, 2513–14 (1986) (interpreting Fed. R. Civ. P. 56).

## B. Traditional Motion

A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004); *see* Tex. R. Civ. P. 166a(b), (c). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *IHS Cedars Treatment Ctr.*, 143 S.W.3d at 798. Summary judgment is proper

7

when parties do not dispute the relevant facts. *Havlen v. McDougall*, 22 S.W.3d 343, 345 (Tex. 2000).

When a party moves for summary judgment under both rules 166a(c) and 166a(i), we will first review the trial court's judgment under the standards of rule 166a(i). *Ford Motor Co.*, 135 S.W.3d at 600. If the appellant failed to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether the appellee's summary judgment proof satisfied the less stringent rule 166a(c) burden. *Id.*

## V. THE FEDERAL MOTOR CARRIER SAFETY REGULATION (FMCSR) POINTS

In portions of her first, second, third, fourth, fifth, ninth, and eleventh points, Appellant raises various arguments asserting that the trial court erred by granting summary judgment because the Federal Motor Carrier Safety Regulations[5] ("FMCSR") doctrines of statutory employee, nondelegable duty, or vicarious liability apply. Appellees PAVL[6] and AAMS argue that the summary judgment evidence conclusively established the inapplicablity of the FMCSR

---

[5] *See, e.g.*, 49 C.F.R. §§ 376.11–.12, 390.3, 390.5, 392.1, 392.60 (2008).

[6] Appellant's claim against PAVL is limited to a claim for PAVL's alleged gross negligence because Appellant made an express, written election of remedies, choosing to pursue a Texas Worker's Compensation Benefits claim as the remedy for any negligence of PAVL. Nonetheless, because Appellant's allegations of gross negligence against PAVL are premised on these same FMCSR doctrines, PAVL (along with AAMS) challenges their applicability.

doctrines of statutory employee, nondelegable duty, and vicarious liability to the present facts because Rocky was an independent contractor and was not driving when the accident occurred and because Cisneros and Ramirez were not employees of either PAVL or AAMS.

The FMCSR define "employee" and "employer." The FMCSR define an "employee" as

> any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle), a mechanic, and a freight handler.

49 C.F.R. § 390.5. The statutory definition of an "employer" under the FMCSR reads, "[A]ny person engaged in a business affecting interstate commerce who owns *or leases a commercial motor vehicle in connection with that business*, or assigns employees to operate it . . . ." *Id.* (emphasis added).

The summary judgment evidence conclusively establishes that Rocky was an independent contractor[7] and that he was not driving the commercial motor

---

[7] In his summary judgment affidavit, Jack Fuyat, Sr., Senior Vice President of Corporate Affairs for the Arpin Group, Inc., and formerly for Paul Arpin Van Lines, Inc., swears that neither AAMS nor PAVL ever had a contract of employment with Rocky or with Alejandro Ramirez or Alejandro Cisneros and that Rocky was an independent contractor. No controverting summary

9

vehicle at the time of the accident.[8]  Independent contractors are statutory employees under the FMCSR definition set forth above only when they are "in the course of operating a commercial motor vehicle."  49 C.F.R. § 390.5; *Pouliot v. Paul Arpin Van Lines*, 292 F. Supp. 2d 374, 379–80 (D. Conn. 2003) (holding "the definition of 'employee' in section 390.5 would apply to an independent contractor while the contractor is driving his commercial motor vehicle on any public or private road or highway").  Because Rocky was not "in the course of operating a commercial motor vehicle" when the accident occurred, he does not meet the FMCSR definition of employee and as a matter of law was not a statutory employee of either AAMS or PAVL.  *Accord Ill. Bulk Carrier, Inc. v. Jackson*, 908 N.E.2d 248, 259 (Ind. Ct. App. 2009) (holding driver was not statutory employee under FMCSR); *Clarendon Nat'l Ins. Co. v. Johnson*, 666 S.E.2d 567, 571 (Ga. Ct. App. 2008) (same).

And the summary judgment evidence likewise conclusively shows that Cisneros and Ramirez do not meet the FMCSR definition of "employee" set forth above.  The summary judgment evidence establishes that Rocky, not

judgment evidence exists.

[8] As previously mentioned, first responders all testified that John Doe A was the driver and the summary judgment affidavits of persons acquainted with Rocky conclusively establish that the photographs of John Doe A are not photographs of Rocky.

AAMS or PAVL, hired Cisneros and Ramirez.  Rocky does not meet the FMCSR definition of "employer" because he is not "a person who owns or leases a commercial motor vehicle."  AAMS owned the commercial motor vehicle and PAVL leased it from AAMS.  Because Rocky does not meet the definition of an "employer," Cisneros and Ramirez cannot qualify as "employees" because they were not "employed by an employer."  Thus, under the facts of this case, the FMCSR statutory employee doctrine of vicarious liability is inapplicable to both Rocky and to Cisneros and Ramirez.[9]

Additionally, PAVL points out that the FMCSR do not apply here because Appellant is not a "member of the public" whom the regulations were designed to protect.  The vicarious liability fiction of the statutory employee doctrine applies only to the extent necessary to insure the carrier's responsibility for the public's safety.  *See White v. Excalibur Ins*. Co., 599 F.2d 50, 53 (5th Cir.), *cert. denied*, 444 U.S. 965 (1979), *superseded on other grounds by regulation as stated in Simpson v. Empire Truck Lines, Inc.*, 571 F.3d 475, 475 (5th Cir.

---

[9] In her ninth point, Appellant argues that a fact issue was presented on her claims of participatory/vicarious liability for respondeat superior, actual and apparent agency, vice principal, and statutory employee.  Because the summary judgment evidence conclusively establishes the lack of an employer-employee relationship or of any type of relationship at all between the "lumpers" and either AAMS or PAVL, no genuine issue of material fact exists concerning any of these theories of vicarious liability.

11

2009); *Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 39, 43 (Tex. App.—Fort Worth 2002, no pet.) (recognizing that FMCSR preempt state law in tort actions in which a member of the public is injured); *see also Sharpless v. Sim*, 209 S.W.3d 825, 830 (Tex. App.—Dallas 2006, pet. denied) ("Regardless of the type of relationship between the carrier and the driver, however, the carrier is not excused from the regulations that treat the driver as a statutory employee *for purposes of liability to the general public*") (emphasis added); *Tamez v. Sw. Motor Transp., Inc.*, 155 S.W.3d 564, 573 (Tex. App.—San Antonio 2004, no pet.) (recognizing policy underlying FMCSR does not apply as to co-employees of motor carriers injured by their fellow employees' negligence since they could recover from their employer in workers' compensation). Because Appellant is not a "member of the general public," the statutory employee fiction does not apply. *See, e.g.*, *White*, 599 F.2d at 53.

To the extent Appellant's first, second, third, fourth, fifth, ninth, and eleventh points claim that the trial court erred by granting summary judgment because the FMCSR doctrines of statutory employee, nondelegable duty, or vicarious liability apply to the present facts, we overrule those points.

## VI. NEGLIGENCE, NEGLIGENCE PER SE, GROSS NEGLIGENCE, AND *RES IPSA LOQUITUR*

Appellant claims in her fifth and seventh points that AAMS and PAVL were negligent and negligent per se by allegedly failing to provide safety

training to Rocky and by failing to ensure Rocky's compliance with various FMCSR. Likewise, in portions of her first, second, third, fourth, fifth, ninth, tenth, and eleventh points, Appellant argues that AAMS and PAVL possessed nondelegable duties under essentially the same FMCSR as follows: 49 C.F.R. § 375.207 (2008) (items that must be in advertisements); 49 C.F.R. § 383.35 (2008) (notification of previous employment); 49 C.F.R. § 392.1 (driving of commercial motor vehicles); 49 C.F.R. § 392.3 (2008) (ill or fatigued driver); 49 C.F.R. § 392.6 (schedules to conform with speed limits); 49 C.F.R. § 392.60 (unauthorized persons not to be transported); 49 C.F.R. § 390.13 (2008) (aiding or abetting violations); 49 C.F.R. § 390.3(e) (general applicability); 49 C.F.R. § 390.35 (2008) (certificates, reports, and records; falsification, reproduction, or alteration); 40 C.F.R. § 5.105 (2008) (definitions); 49 C.F.R. § 391.1 (2008) (scope of the rules in this part, additional qualifications; duties of carrier drivers); 49 C.F.R. § 391.15 (2008) (disqualification of drivers); and 49 C.F.R. § 391.23 (2008) (maximum driving time for property-carrying vehicles). In Appellant's sixth point, she claims in three sentences that her pleading of the doctrine of *res ipsa loquitur* is sufficient to defeat AAMS's and PAVL's no-evidence summary judgment motions. In her twelfth point, she contends that a motor carrier can be liable for the gross negligence of its agents or vice principals.

13

A negligence cause of action requires proof of (1) a legal duty owed by one person to another, (2) a breach of that duty, and (3) damages proximately caused by the breach. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002).

Negligence per se is a concept adopted by the civil courts in which a duty is based on a standard of conduct created by a statute rather than on the reasonably prudent person test used in pure negligence claims. *Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex. 1997); *Omega Contracting, Inc. v. Torres*, 191 S.W.3d 828, 839 (Tex. App.—Fort Worth 2006, no pet.) (op. on reh'g.) (discussing negligence per se in the context of nondelegable duties under the FMCSR). In a negligence per se case, the factfinder is not asked to decide whether the defendant acted as a reasonably prudent person would have acted under the same or similar circumstances; instead, the statute itself states what a reasonably prudent person would have done. *Omega Contracting*, 191 S.W.3d at 839. If an excuse is not raised, the only inquiry for the factfinder is whether the defendant violated the statute and, if so, whether the violation was a proximate cause of the injury. *Id.*

To prove that a defendant's negligence constituted gross negligence, a plaintiff must prove two elements: (1) that viewed objectively from the actor's standpoint, the act or omission involved an extreme degree of risk, considering

14

the probability and magnitude of the potential harm to others, and (2) that the actor must have had actual, subjective awareness of the risk involved, but nevertheless proceeded in conscious indifference to the rights, safety, or welfare of others. *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998). Evidence of simple negligence is not enough to prove either the objective or subjective elements of gross negligence. *Id*.

Here, AAMS and PAVL both filed no-evidence motions for summary judgment on the issue of causation. Because causation is an element of Appellant's negligence, negligence per se, and gross negligence claims, even if summary judgment evidence existed that AAMS and PAVL were negligent, violated one of the statutory duties alleged by Appellant, or were grossly negligent, in light of AAMS's and PAVL's no-evidence motions on the issue of causation, Appellant had the burden to come forward with more than a scintilla of evidence that AAMS's negligence was a proximate cause of the accident, that AAMS's and PAVL's alleged statutory FMCSR violations were a proximate cause of the accident, and that PAVL's alleged gross negligence was a proximate cause of the accident. *See, e.g.*, *D. Houston, Inc.*, 92 S.W.3d at 454; *Mobil Oil Corp.*, 968 S.W.2d at 921; *Omega Contracting*, 191 S.W.3d at 839. Appellant points us to no such summary judgment evidence; AAMS's and PAVL's summary judgment evidence establishes that Rocky had no trips

15

scheduled after this one, Rocky was told he did not have to return to Dallas on the evening of the accident, and Rocky had not exceeded the number of hours he was permitted to drive. Because no summary judgment evidence exists that any violation of any FMCSR by AAMS or PAVL proximately caused the accident, we overrule Appellant's seventh, tenth, and twelfth points and the balance of her first, second, third, fourth,[10] fifth, ninth and eleventh points.

*Res ipsa loquitur* is a rule of evidence whereby negligence of the alleged wrongdoer may be inferred from the mere fact that the accident happened, provided (1) the character of the accident and the circumstances attending it lead reasonably to the belief that, in the absence of negligence, it would not have occurred, and (2) the thing that caused the injury is shown to have been under the management and control of the alleged wrongdoer. *Haddock v. Arnspiger*, 793 S.W.2d 948, 950 (Tex. 1990). The effect of successfully invoking the *res ipsa loquitur* doctrine is that the plaintiff can survive no-evidence procedural challenges. *See Mobil Chem. Co. v. Bell*, 517 S.W.2d

---

[10] Within her fourth point, Appellant claims AAMS negligently entrusted the truck to Rocky. Because the summary judgment evidence conclusively established that Rocky was not driving at the time of the accident, any negligent entrustment to Rocky, as a matter of law, was not a proximate cause of the accident, and the trial court did not err by granting AAMS's and PAVL's no-evidence-of-causation summary judgment motions on Appellant's theory that AAMS or PAVL negligently entrusted the truck to Rocky.

245, 251 (Tex. 1975) (explaining that no presumption of defendant's negligence arises, instead the jury is merely free to infer negligence; the plaintiff continues to have burden of persuading jury by preponderance of evidence that defendant was negligent).

Here, Appellant has not successfully invoked the doctrine of *res ipsa loquitur* to avoid AAMS's and PAVL's no-evidence summary judgment challenges. Appellant did not establish that the thing that caused the injury—here, the driver of the commercial motor vehicle, who was not Rocky—was under the management and control of the alleged wrongdoer—AAMS or PAVL. That is, because neither Cisneros nor Ramirez were actual or statutory employees of AAMS or PAVL, they were not under AAMS's or PAVL's control.

We overrule Appellant's sixth point.

## VII. NEGLIGENT ENTRUSTMENT

In her eighth point, Appellant argues that the trial court erred by granting summary judgment on her negligent entrustment claim because a fact issue exists as to whether "AAMS trusted its vehicle to Alejandro Ramirez and/or Alejandro Cisneros" and "knew or should have known Alejandro Ramirez and/or Alejandro Cisnersos were unlicensed, incompetent, or reckless."

17

To establish negligent entrustment of an automobile, a plaintiff must prove the following elements: (1) the owner entrusted the automobile, (2) to a person who was an incompetent, or reckless driver, (3) who the owner knew or should have known was incompetent or reckless, (4) the driver was negligent, and (5) the driver's negligence proximately caused the accident and the plaintiff's injuries. *De Blanc v. Jensen*, 59 S.W.3d 373, 375–76 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (citing *Schneider v. Esperanza Transmission Co.*, 744 S.W.2d 595, 596 (Tex. 1987)). AAMS and PAVL argue that the summary judgment evidence conclusively negates the first and second elements of negligent entrustment. They claim that they did not entrust the commercial motor vehicle to anyone except Rocky and that Rocky was not driving at the time of the accident. Because the summary judgment evidence does conclusively establish these two facts, and because no evidence exists that AAMS or PAVL entrusted the commercial motor vehicle to Ramirez or Cisneros or that AAMS or PAVL knew or should have known that Ramirez or Cisneros were reckless or incompetent drivers, the trial court did not err by granting summary judgment on Appellant's negligent entrustment claim. *See, e.g., Sheffield v. Drake*, 255 S.W.3d 779, 786 (Tex. App.—Eastland 2008, pet. denied) (upholding no-evidence summary judgment granted on negligent

entrustment claim because no evidence existed defendant entrusted vehicle to driver).

We overrule Appellant's eighth point.

## VIII. CONCLUSION

Having overruled Appellant's twelve points on appeal, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

DELIVERED: August 13, 2009